JUDGE CROTTY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x

BROADVISION, INC.,

                Plaintiff,

      - against -

GENERAL ELECTRIC COMPANY and
THE MEDICAL PROTECTIVE COMPANY,

                Defendants.

------------------------------------------------------------------x

Civil Action No.:

**COMPLAINT**

ECF CASE

08 CV 1478

[Stamp: FEB 13 2008 U.S.D.C. S.D.N.Y. CASHIERS]

    Plaintiff, BroadVision, Inc. ("Plaintiff" or "BroadVision"), by its attorneys, Tannenbaum Helpern Syracuse & Hirschtritt LLP, for its Complaint herein alleges:

### Parties and Jurisdiction

    1.    Plaintiff BroadVision is a Delaware corporation with its principal place of business at 1600 Seaport Blvd., 5th Floor, North Bldg., Redwood City, California 94063

    2.    Upon information and belief, Defendant General Electric Company ("GE") is a New York corporation with its principal place of business at 3135 Easton Turnpike, Fairfield, Connecticut, 06431

    3.    Upon information and belief, defendant The Medical Protective Company ("MedPro") is an Indiana corporation with its principal place of business at 5814 Reed Road, Fort Wayne, Indiana 46835.

    4.    The matter in controversy exceeds the sum or value of $75,000 exclusive of interest and costs.

5. This action arises under the Copyright law of the United States, 17 U.S.C. § 101, *et seq*. This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331, 1332, 1338(a) and 1367.

### Nature of the Action

6. This is an action (a) for infringement of the copyrights protecting BroadVision's One-To-One family of computer software products ("One-To-One"), (b) for breach of a Master License Agreement dated as of November 16, 1999, between BroadVision and GE, (c) for breach of a Master License Agreement dated September 30, 2005 between BroadVision and MedPro, (d) in *quantum meruit* to recover the reasonable value of defendants' unlicensed use of One-To-One, and (d) for unjust enrichment.

### FACTS COMMON TO ALL CLAIMS FOR RELIEF

#### BroadVision

7. BroadVision engages in the business of developing and licensing computer software and providing maintenance, support and updates for its software.

8. Among other products, BroadVision licenses "One-To-One." One-To-One is a highly sophisticated software product family, including a number of components and modules, designed for use by businesses that maintain web based applications with which employees, customers, potential customers, other constituents, and other website visitors ("Visitors") interact by supplying and receiving certain information.

#### GE and MedPro

9. GE is a large conglomerate that owns and operates a number of businesses, many of which maintain websites to, among other things, sell products or services to, provide

information to, and interact with, employees, customers, potential customers, other constituents, and other Visitors seeking information about the products and services of such businesses.

10. Among other businesses, GE, through subsidiaries and/or affiliates, has engaged in the insurance and reinsurance business.

11. MedPro is a provider of medical professional liability insurance to physicians, dentists and other primary health care providers. Upon information and belief, MedPro is licensed to provide such insurance in all fifty states, including New York, is qualified to do business in New York directly or through an agent, is licensed and regulated by the Superintendent of Insurance of New York and regularly and systematically sells and provides medical and/or dental primary and/or excess professional liability insurance and/or reinsurance in New York.

12. Upon information and belief, prior to November 16, 1999, GE acquired MedPro and MedPro became a direct or indirect subsidiary of GE. While owned by GE, on and after November 16, 1999, MedPro was operated as a division, subsidiary or affiliate of Employers Reinsurance Corporation ("Employers Re"), which was, in turn, a division, subsidiary or affiliate of GE's "Insurance Solutions" business unit, known as "GEIS."

**The BroadVision – GE Master License Agreement**

13. On or about November 16, 1999, GE and BroadVision entered into a Master License Agreement (the "MLA") pursuant to which GE, for itself and on behalf of all of its components, subsidiaries, affiliates, and joint-venture partners worldwide, could license BroadVision's One-To-One software and related maintenance and support and upgrade services.

14.   The MLA provided several options pursuant to which GE could acquire various packages of usage rights for the One-To-One software for itself or its business units for specified license fees.

**The Employers Re Usage Rights**

15.   Pursuant to the MLA, in or about December 1999, GE purchased a package of usage rights for the One-To-One software for the use of its insurance businesses operated as divisions, subsidiaries or affiliates of Employers Re (the "Usage Rights"). The package consisted of the Option 2 Starter Kit, provided for in the MLA, for a license fee of $500,000, and 100,000 Deployment Licenses (giving the right to create and maintain a maximum of 100,000 user profiles) for a license fee of $250,000, together with maintenance and support and software upgrade support for an additional $120,000.

16.   "Option 2" afforded GE the right to acquire a "Starter Kit" consisting of a bundled package of the right to use a specified number of BroadVision One-To-One Enterprise Software Development Systems and One-To-One Web Application Development Systems and other related software. Pursuant to the MLA, each development License permitted a named developer to develop code for the One-To-One software being used.

17.   To use the One-To-One software, including the bundled usage rights available pursuant to Option 2 of the MLA, it was also necessary for GE, for itself, or on behalf of a business unit, to license an adequate number of "Deployment Licenses." Each Deployment License permitted the creation and maintenance of a "user profile" for a Visitor to the website in connection with which the One-To-One software was being used. Pursuant to the MLA, The price per Deployment License depended on the number of Deployment Licenses purchased and decreased as the aggregate number of licenses purchased increased.

4

18. Upon information and belief, the Usage Rights were used by, and shared among, the Employers Re insurance businesses, which included MedPro.

19. Upon information and belief, during GE's ownership of MedPro and Employers Re, the actual usage of the One-To-One software exceeded the Usage Rights by both the use of more named developers than were licensed as part of Option 2, and by creating and maintaining in excess of the 100,000 user profiles that the Deployment Licenses purchased permitted.

20. Upon information and belief, MedPro and Employers Re continued to use and exploit the One-To-One software in excess of the Usage Rights after their divestitures by GE as more fully described below.

21. Neither GE, MedPro nor Employers Re have paid license fees to BroadVision for their usage of the One-To-One software in excess of the Usage Rights.

**GE's Divesture of MedPro**

22. On or about July 1, 2005, GE's GEIS business unit sold MedPro to Columbia Insurance, a subsidiary of Berkshire Hathaway for a reported $825 million.

23. Upon information and belief, MedPro continued to use and exploit the One-To-One software in excess of the Usage Rights from the time it was sold by GE until September 30, 2005 when BroadVision and MedPro entered into a separate license agreement governing MedPro's prospective use of the One-To-One software (the "MedPro MLA").

24. At the time BroadVision entered into the MedPro MLA with MedPro, BroadVision was unaware that MedPro's usage of the One-To-One software had exceeded the Usage Rights under the MLA, as more fully set forth below.

**GE's Divesture of Employers Re**

25. On or about June 12, 2006, GE sold its GEIS business unit, including Employers Re, to Swiss Reinsurance Corporation ("Swiss Re") for between $7.4 and $7.8 billion in cash and securities.

26. Upon information and belief, Employers Re continued to use and exploit the One-To-One software in excess of the Usage Rights after it was sold by GE as part of the sale of the GEIS business unit.

27. On or about January 1, 2008, Swiss Re caused Employers Re to be merged with Westport Insurance Corp., also owned by Swiss Re. The surviving corporation is known as Westport Insurance Corp. ("Westport").

**BroadVision's Audit of the Usage Rights**

28. Pursuant to the MLA, BroadVision has the right to audit the records of GE and its businesses, or former businesses, using the One-To-One software to ascertain that usage of the software conforms to the usage rights purchased and that appropriate license fees have been, or are being, paid for all usage. If an audit reveals an underpayment, BroadVision is entitled to be paid any additional amounts due, and if the underpayment exceeds five percent (5%) of the license fees paid, BroadVision is also entitled to be paid the reasonable costs of conducting the audit.

29. On or about April 5, 2007, pursuant to the MLA and with the consent and cooperation of Employers Re n/k/a Westport, BroadVision conducted an audit of Employers Re's usage of the One-To-One software. The audit showed that Employers Re alone was using the One-To-One software significantly in excess of the Usage Rights. Employers Re had (1) been using significantly more copies of the software than had been licensed, and (2) was maintaining a

number of user profiles far in excess of the number that the 100,000 deployment licenses purchased allowed. Thus, the Employers Re audit showed that Employers Re alone was using more than all of the Usage Rights that GE had purchased for the benefit of Employers Re and MedPro. Furthermore, the audit showed that the overuse by Employers Re alone exceeded the Usage Rights between 2002 and 2005 prior to GE's divesture of Med Pro, and in turn prior to the effective date of the MedPro MLA.

30. On or about April 9, 2007, BroadVision notified MedPro by letter that it desired to conduct an audit of MedPro's usage of the One-To-One software both before and after the effective date of the MedPro MLA at MedPro's premises and sought to arrange a mutually convenient date for such audit.

31. On or about April 26, 2007, BroadVision began its audit at MedPro's premises, but to date has been unable to complete its audit due to MedPro's refusal to permit access to the necessary records which, upon information and belief, are within its possession, custody and control. MedPro granted access to relevant records concerning software usage since the effective date of the MedPro MLA, which showed that MedPro had used the One-To-One software in excess of the usage rights granted under the MedPro MLA. However, MedPro asserted that, pursuant to contractual agreements with GE, GE's consent was required for it to grant access to the relevant records concerning software usage before the effective date of the MedPro MLA.

32. Thereafter, BroadVision procured for MedPro GE's express consent to its audit of the relevant records. By letter dated December 9, 2007, GE's Senior Counsel-Litigation & Legal Policy stated to MedPro:

> I am writing at BroadVision's request to advise you that GE hereby gives MedPro its full and unequivocal consent, pursuant to any and all agreements that may require it, to make available to BroadVision for audit any and all records

7

concerning MedPro's usage of the Licensed Software at any time prior to September 30, 2005. From GE's perspective, MedPro is free to make such records available promptly at a time and place mutually convenient to MedPro and BroadVision, and MedPro may give BroadVision its full and complete cooperation in conducting its audit, in accordance with its understanding of the terms of the License Agreement.

33. Notwithstanding its receipt of GE's express consent, MedPro has refused, and continues to refuse, to make the relevant records available and BroadVision has been unable to complete its audit and thereby determine the full extent of MedPro's usage of the One-To-One software in excess of the Usage Rights or the amounts that Defendants owe BroadVision for such excess use.

34. Notwithstanding its inability to complete its audit, BroadVision concludes, and therefore alleges, that MedPro's usage of the One-To-One software has exceeded the Usage Rights based on the results of its audit of Employers Re's usage, which showed that Employers Re's usage alone had exhausted and exceeded all of the Usage Rights, and on the results of its audit of software usage under the MedPro MLA which indicated that MedPro has exceeded the usage permitted under the MedPro MLA.

## FIRST CLAIM FOR RELIEF

### Copyright Infringement

35. Plaintiff repeats and realleges Paragraphs 1 through 34 hereof as if fully set forth at length.

36. BroadVision is the author of the One-To-One software described above within the meaning of the Copyright Act, 15 U.S.C. § 101, *et seq*.

37. The One-To-One software is original and is copyrightable subject matter under the laws of the United States.

38. BroadVision owns the copyright in the One-To-One software, has complied with the Copyright laws of the United States and has received from the Register of Copyrights the following Certificates of Registration of the copyright in various portions and versions of the software licensed to Defendants pursuant to the MLA:

| | |
|---|---|
| TX6348831 | BroadVision One-To-One Enterprise: version 5.5 |
| TX6348832 | BroadVision One-To-One Enterprise: version 6.0 |
| TX6348833 | BroadVision InfoExchange: version 5.5.0 |
| TX6371852 | BroadVision One-To-One Enterprise: version 4.1 |
| TX6371853 | BroadVision One-To-One Enterprise: version 5.0 |
| TX6371854 | BroadVision One-To-One: version 2.1 |
| TX6371855 | One-To-One Knowledge: version 3.0.0 |
| TX6371856 | BroadVision One-To-One Knowledge: version 4.1.0 |
| TX6371857 | BroadVision ERM application: version 5.5.0 |
| TX6371858 | BroadVision One-To-One: version 2.5 |
| TX6371859 | BroadVision One-To-One: version 2.6 |
| TX6371860 | BroadVision One-To-One: version 3.0 |
| TX6371861 | BroadVision One-To-One: version 4.0 |
| TX6435616 | Knowledge WebApp: version 2.0 |
| TX6436837 | One-To-One Command Center: version 5.5 |
| TX6436838 | One-To-One Command Center: version 6.0 |

39. BroadVision has not licensed or consented to Defendants' use of the One-To-One software in excess of the Usage Rights or the usage rights granted under the MedPro MLA.

40. Defendants have infringed the copyright in BroadVision's One-To-One software by making and using copies of various portions thereof in excess of the number authorized by the MLA and the Usage Rights.

41. MedPro has infringed the copyright in BroadVision's One-To-One software by making and using copies of various portions thereof in excess of the number authorized by the MedPro MLA and the usage rights granted thereunder.

42. BroadVision is irreparably injured by said infringement, has no adequate remedy at law, and if said infringement is not enjoined and restrained BroadVision will be further irreparably injured.

43. By reason of the foregoing, BroadVision has been damaged in an amount to be proved at trial but, upon information and belief, is not less than $3.2 million, and is entitled to recover statutory damages, infringing profits and other relief provided for under the Copyright Act.

## **SECOND CLAIM FOR RELIEF**

### **Breach of the MLA**

44. Plaintiff repeats and realleges Paragraphs 1 through 43 hereof as if fully set forth at length.

45. Defendants have breached the MLA by making copies of and using the One-To-One software in excess of the Usage Rights licensed.

46. Defendant MedPro has breached the MLA by refusing to comply with the audit provisions thereof, including, but not limited to, refusing to make the relevant data concerning use of the One-To-One software prior to September 30, 2005 available to BroadVision.

47. By reason of the foregoing, BroadVision has been damaged in an amount to be proved at trial but, upon information and belief, not less than $3 million.

### THIRD CLAIM FOR RELIEF

### Breach of the MedPro MLA

48. Plaintiff repeats and realleges Paragraphs 1 through 47 hereof as if fully set forth at length.

49. MedPro has breached the MedPro MLA by making copies of and using the One-To-One software in excess of the usage rights provided for under the MedPro MLA.

50. By reason of the foregoing, BroadVision has been damaged in an amount to be proved at trial but, upon information and belief, not less than $200,000.

### FOURTH CLAIM FOR RELIEF

### *Quantum Meruit*

51. Plaintiff repeats and realleges Paragraphs 1 through 50 hereof as if fully set forth at length.

52. At all relevant times, Defendants were aware that it is usual and customary for software vendors to charge license fees for the use of their proprietary software, and that software vendors expect to be paid by users for usage of their proprietary software in excess of the usage rights for which license fees have been paid.

53. During the term of the MLA up to September 30, 2005, Defendants used the One-To-One software in excess of the Usage Rights.

54. During the term of the MedPro MLA commencing September 30, 2005, MedPro used the One-To-One software in excess of the usage rights provided for under the MedPro MLA.

55. BroadVision is entitled to recover the reasonable value of Defendants' usage of the One-To-One software in excess of the Usage Rights before September 30, 2005.

56. BroadVision is entitled to recover the reasonable value of MedPro's usage of the One-To-One software in excess of the usage rights provided for under the MedPro MLA commencing September 30, 2005.

57. By reason of the foregoing, BroadVision has been damaged in an amount to be proved at trial but, upon information and belief, is not less than $3.2 million.

## FOURTH CLAIM FOR RELIEF

### Unjust Enrichment

58. Plaintiff repeats and realleges Paragraphs 1 through 57 hereof as if fully set forth at length.

59. Defendants' copying and use of the One-To-One software in excess of the Usage Rights licensed and paid for pursuant to the MLA prior to September 30, 2005 conferred a benefit on Defendants' for which Defendants have not paid.

60. MedPro's copying and use of the One-To-One software in excess of the usage rights licensed and paid for pursuant to the MedPro MLA after September 30, 2005 conferred a benefit on MedPro for which MedPro has not paid.

61. Defendants have been unjustly enriched by virtue of having copied and used the One-To-One software in excess of the usage rights licensed and have benefited from such copying and usage.

62. By reason of the foregoing, Broadvision has been damaged in an amount to be proven at trial, but upon information and belief, not less than $3.2 million.

WHEREFORE, Plaintiff demands judgment:

(a) On its First Claim for Relief (i) for preliminary and permanent injunctive relief, (ii) for other applicable remedies for infringement as set forth in the Copyright Act, 17 U.S.C. §501 *et seq.*, (iii) for its reasonable attorneys' fees, and (iv) for damages in an amount to be proved at trial, but not less than $3.2 million;.

(b) On its Second Claim for Relief for damages in an amount to be proved at trial, but not less than $3 million, and its reasonable attorneys' fees in accordance with §28.0 of the MLA;

(c) On its Third Claim for Relief for damages in an amount to be proved at trial, but not less than $200,000;

(d) On its Fourth and Fifth Claims for Relief for damages in an amount to be proved at trial, but not less than $3.2 million,

together with such other and further relief as this Court deems just and proper and the costs and disbursements of this action.

Dated: New York, New York
       February 12, 2008

                      TANNENBAUM HELPERN
                      SYRACUSE & HIRSCHTRITT, LLP

By: *[signature]*
    L. Donald Prutzman (LP 1327)
900 Third Avenue
New York, New York 10022
(212) 508-6700
   Attorneys for Plaintiff