UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -    x

BROADVISION, INC.,                               :    Index No. 08-CV-1478 (MGC)

                                                 :

                        Plaintiff,               :    ECF Case

            -against-                            :

GENERAL ELECTRIC COMPANY and THE                 :
MEDICAL PROTECTIVE COMPANY,
                                                 :

                        Defendants.              :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -    x


### MEMORANDUM OF LAW IN SUPPORT OF
### DEFENDANT GENERAL ELECTRIC COMPANY'S
### <u>MOTION TO DISMISS</u>


Robert Penchina
**LEVINE SULLIVAN KOCH & SCHULZ, L.L.P.**
321 West 44th Street, Suite 510
New York, NY 10036
(212) 850-6100

*Attorneys for Defendant*
*General Electric Company*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................... ii

PRELIMINARY STATEMENT ............................................................................... 1

STATEMENT OF PLEADED FACTS ..................................................................... 2

ARGUMENT ............................................................................................................ 6

I.    BV'S CLAIM FOR COPYRIGHT INFRINGEMENT FAILS TO STATE
      A BASIS FOR RELIEF AGAINST GE ......................................................... 6

      A.    BV's Complaint Does Not Identify Any Infringing Conduct By GE
            and Does Not Sufficiently Identify the Copyrighted Work
            Allegedly Infringed ............................................................................ 7

            1.    No Infringing Acts Were Done By or Alleged Against GE ....... 7

            2.    BV Did Not Sufficiently Identify the Allegedly Infringed
                  Works .......................................................................................... 9

      B.    BV's Claims Are Barred in Whole or in Part by the Statute of
            Limitations ......................................................................................... 11

      C.    Any Use of BV's Software Was Permitted By The MLA and Was
            Therefore Non-Infringing .................................................................. 13

II.   BV'S STATE LAW CLAIMS ARE PREEMPTED BY THE FEDERAL
      COPYRIGHT LAW ...................................................................................... 17

      A.    BV's Breach of Contract Claim is Preempted .................................. 19

      B.    BV's Quantum Meruit and Unjust Enrichment Claims Are
            Preempted .......................................................................................... 20

III.  BV HAS FAILED TO PLEAD THE ELEMENTS NEEDED TO
      SUPPORT ITS STATE LAW CLAIMS ...................................................... 22

CONCLUSION ....................................................................................................... 23

# TABLE OF AUTHORITIES

## CASES

*America Movie Classics Co. v. Turner Entertainment Co.*, 922 F. Supp. 926
(S.D.N.Y. 1996) ......................................................................................... 20

*Architectronics, Inc. v. Control Systems, Inc.*, 935 F. Supp. 425 (S.D.N.Y. 1996) ..................... 19

*Ariel (UK) Ltd. v. Reuters Group, PLC*, No. 05 Civ. 9646, 2006 WL 3161467
(S.D.N.Y. Oct. 31, 2006) ............................................................................ 16

*Auscape International v. National Geographic Society*, 409 F. Supp. 2d 235
(S.D.N.Y. 2004) .....................................................................................11, 12

*Bespaq Corp. v. Haoshen Trading Co.,* No. C 04-3698, 2005 WL 14841
(N.D. Cal. Jan. 3, 2005) .............................................................................. 10

*Bonito Boats Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141 (1989) ......................................... 17

*Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296 (2d Cir. 2004).................18, 19, 21

*Cole v. Allen*, 3 F.R.D. 236 (S.D.N.Y. 1942) ............................................................. 10

*Community for Creative Non-Violence v. Reid*, 490 U.S. 730 (1989) ........................................ 17

*Davis v. Blige*, 505 F.3d 90 (2d Cir. 2007) .............................................................. 13

*De Jesus v. Sears, Roebuck & Co.*, 87 F.3d 65 (2d Cir. 1996) ............................................... 8, 14

*Feist Publications, Inc. v. Rural Telegraph Service Co.*, 499 U.S. 340 (1991)............................ 18

*Felix the Cat Productions, Inc. v. California Clock Co.*, No. 04 Civ. 5714, 2007 WL
1032267 (S.D.N.Y. Mar. 30, 2007) .......................................................... 13

*Flynn v. Health Advocate, Inc.*, No. Civ. A. 03-3764, 2004 WL 51929
(E.D. Pa. Jan. 13, 2004) .............................................................................. 10

*Gee v. CBS, Inc.*, 471 F. Supp. 600 (E.D. Pa.), *aff'd*, 612 F.2d 572 (3d Cir. 1979)..................... 10

*Graham v. James*, 144 F.3d 229 (2d Cir. 1998)..........................................................13, 15, 16

*Home & Nature Inc. v. Sherman Specialty Co.*, 322 F. Supp. 2d 260 (E.D.N.Y. 2004).............. 10

*Hotaling v. Church of Jesus Christ of Latter-Day Saints*, 118 F.3d 199 (4th Cir. 1997)............. 12

*Hunter v. Squirrel Hill Associates, L.P.*, 413 F. Supp. 2d 517 (E.D. Pa. 2005) ...................12, 13

*International Audiotext Network, Inc. v. AT&T Co.*, 62 F.3d 69 (2d Cir. 1995) .................2, 3, 14

*Kelly v. L.L. Cool J.*, 145 F.R.D. 32 (S.D.N.Y. 1992), *aff'd,* 23 F.3d 398 (2d Cir. 1994).......... 7, 9

*Krasset v. Joseph E. Seagram & Sons, Inc.*, 2002 Copyright L. Dec. ¶ 28,514, 2002 WL
    1997926 (S.D.N.Y. Aug. 29, 2002) ......................................................... 7

*Leeds v. Meltz*, 85 F.3d 51 (2d Cir. 1996) ............................................................. 14

*Lennon v. Seaman*, 2002 Copyright L. Dec. ¶ 28,375, 2002 WL 109525
    (S.D.N.Y. Jan. 28, 2002) ..................................................................... 8

*Madison River Management Co. v. Business Management Software Corp.*,
    351 F. Supp. 2d 436 (M.D.N.C. 2005)....................................................... 20

*Marvullo v. Gruner & Jahr*, 105 F. Supp. 2d 225 (S.D.N.Y. 2000) ....................................7, 8, 22

*Master Sound International, Inc. v. Polygram Latino U.S.*, 50 U.S.P.Q. 2d 1859,
    1999 WL 269958 (S.D.N.Y. May 4, 1999) ................................................. 21

*National Basketball Association v. Motorola, Inc.*, 105 F.3d 841 (2d Cir. 1997) ...................... 18

*Netzer v. Continuity Graphic Associates, Inc.*, 963 F. Supp. 1308 (S.D.N.Y. 1997) ................. 21

*Orange County Choppers, Inc. v. Olaes Enterpises, Inc.*, 497 F. Supp. 2d 541
    (S.D.N.Y. 2007).............................................................................. 21

*Plunket v. Doyle*, No. 99 Civ. 11006, 2001 WL 175252 (S.D.N.Y. Feb. 22, 2001).................... 10

*Reid v. American Society of Composers, Authors & Publishers*, 1994 Copyright L. Dec.
    ¶ 27,225, 1994 WL 3409 (S.D.N.Y. Jan. 5, 1994)....................................... 8

*Roberts v. Keith*, No. 04 Civ. 10079, 2006 WL 547252 (S.D.N.Y. Mar. 7, 2006)..................... 11

*Roley v. New World Pictures, Ltd.*, 19 F.3d 479 (9th Cir. 1994) ................................ 12

*Selby v. New Line Cinema Corp.*, 96 F. Supp. 2d 1053 (C.D. Cal. 2000)................................. 20

*Smart v. Goord*, 441 F. Supp. 2d 631 (S.D.N.Y. 2006) ............................................... 4

*Stewart v. World Wrestling Federation Entertainment, Inc.*, 74 U.S.P.Q. 2d 1024,
    2005 WL 66890 (S.D.N.Y. Jan. 11, 2005) ............................................... 21

*Stone v. Williams*, 970 F.2d 1043 (2d Cir. 1992)...................................................... 12

*Strauss v. The Hearst Corp.*, 8 U.S.P.Q. 2d 1832, 1988 WL 18932
(S.D.N.Y. Feb. 19, 1988)............................................................................. 22

*Summit Machine Tool Manufacturing Corp. v. Victor CNC System, Inc.*, 7 F.3d 1434
(9th Cir. 1993)............................................................................................. 17

*TRW Inc. v. Andrews*, 534 U.S. 19 (2001) ............................................................... 12

*U.S. Naval Institute v. Charter Communications, Inc.*, 936 F.2d 692 (2d Cir. 1991)................. 15

*Vasquez v. Torres-Negron*, No. 06 Civ. 619, 2007 WL 2244784 (S.D.N.Y. July 11, 2007) ....... 12

*William Wrigley Jr. Co. v. Walters*, 890 F.2d 594 (2d Cir. 1989) ................................. 9

*Wolff v. Institute of Electrical & Electronic Engineers, Inc.*, 768 F. Supp. 66
(S.D.N.Y. 1991)........................................................................................... 20

*Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446 (6th Cir. 2001)................................... 20

## STATUTES & RULES

Federal Rule of Civil Procedure 12(b)(6)...................................................................... 1

17 U.S.C. § 301 .......................................................................................17, 21, 18

17 U.S.C. § 507(b)............................................................................................. 11

## MISCELLANEOUS

1-1 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 1.01[B][1][a] .................. 20

1 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 1.01[B][1][g] ..................... 21

3 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 10.15[A] ............................. 15

## PRELIMINARY STATEMENT

This memorandum respectfully is submitted by General Electric Company ("GE") in support of its motion to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6), the complaint against it by Plaintiff BroadVision, Inc. ("BV") on the ground that the complaint fails to state a claim upon which relief may be granted.

BV is a software developer that entered into a master agreement with GE that authorized GE to reproduce and use BV's software and established discount prices at which BV's software would be made available to GE's affiliated companies. BV believes that two independent companies formerly affiliated with GE have made use of BV's software in excess of what was permitted under agreements between those companies and BV. BV also surmises that those entities may have made excess uses during some prior unspecified time when the entities still were affiliated with GE.

Notwithstanding that (i) GE is separately incorporated from the two companies that BV believes were infringing its software, (ii) GE itself made no use of BV's software, and (iii) BV is neither aware of nor pled any facts to the contrary, BV named GE as a defendant. BV attempts to assert a copyright infringement claim and three state-law claims against GE all predicated on alleged use of BV's software purportedly in excess of license restrictions. However, BV's copyright claim is defective on numerous grounds, including that:

- BV did not identify any infringing acts undertaken *by GE*, as opposed to any other party;

- BV did not sufficiently identify the works that allegedly were infringed;

- any copying or use that may have been done by GE or its affiliates expressly was authorized under the license agreement between GE and BV; and

- BV's claim against GE is barred in whole or in part by the statute of limitations.

BV also asserts defective state-law claims, sounding in breach of contract, *quantum meruit* and unjust enrichment. In addition to other defects, these state-law claims suffer from the same defects as does BV's copyright claim. What's more, each of BV's state-law claims are preempted by the federal Copyright Act.

For the reasons that follow, all of BV's claims against GE should be dismissed, and the Court should award GE its costs, including attorneys' fees, together with such other and further relief as the Court deems appropriate.

## STATEMENT OF PLEADED FACTS

The following facts are alleged in the Complaint and are accepted as true solely for the purposes of this motion. GE does not accept legal conclusions in the Complaint as true.

BV is in the business of developing and licensing software products. (Cmpl. ¶ 7.) Among BV's software products is "One-To-One," which is a "software product family, including a number of components and modules, designed for use by businesses that maintain web based applications." (*Id.* ¶ 8.) GE is a large conglomerate, which directly or indirectly owns a number of subsidiary or affiliated companies. (*Id.* ¶¶ 9-10, 12.)

BV and GE are parties to a Master License Agreement between them dated November 16, 1999 (the "MLA"). (*Id.* ¶ 13.) The MLA granted to GE certain rights with respect to "Software," which the MLA defined as "a product designated as BroadVision One-To-One." (MLA § 1.0, Ex. A to the Penchina Declaration).[1] Specifically, the MLA states that: "Licensor

---

[1] "[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint, the court may nevertheless take the document into consideration, . . . without converting the proceeding to one for summary judgment." *Int'l Audiotext Network, Inc. v. AT&T, Co.*, 62 F.3d 69, 72 (2d Cir.

*Continued on following page . . . .*

[BV] grants and agrees to grant GE a non-exclusive perpetual, non-transferable (except as set forth in this Agreement), worldwide license(s) *to use and/or reproduce Software* on Computers and Networks under the terms of this Agreement." (*Id.* § 3.1 (emphasis added).) Separately and additionally, the MLA granted further rights to GE as may be specified in a product order: "Licensor hereby grants and agrees to grant to GE a non-exclusive license to reproduce and install under the terms of this Agreement the Software as specified in each Product Order Form." (*Id.* § 3.2.) The only restrictions on GE's use of the One-To-One Software set forth in the MLA are contained in Section 3.5, entitled "Prohibited Uses," which states:

> GE may not (a) rent, lease or loan the Software; (b) use run-time versions of third-party products embedded in the Software, if any, for any use other than the intended use of the Software; (c) disassemble, decompile, or reverse engineer the Software; (d) transfer possession of any copy of the Software to another party, except as expressly permitted herein; or (e) use the Software in any way not expressly provided for in this Agreement.

Other than these spelled out prohibited uses, the MLA contains no restrictions on GE's use of the Software, and does not limit the number of copies or users of the Software. Moreover, the MLA expressly permits use to be made by the various GE business units, subsidiaries and affiliates, as the MLA defines "GE" to "mean all General Electric components, subsidiaries, affiliates, and joint-venture partners worldwide under the common control of GE." (*Id.* § 1.0.)

The pricing for BV's software is set forth in "Schedule A" to the MLA. (*Id.*, Sched. A.) Schedule A itself contains no limitations on the number of copies or users of One-To-One, but sets forth a pricing schedule based on the number of copies or users. The MLA contemplated

---

*Continued from previous page . . . .*

1995). Because BV "relies heavily upon its terms and effect," the MLA is integral to BV's complaint and may be taken into account on this motion. *Id.*

that if BV were to sell its software to any GE affiliated companies, it would do so only pursuant to a mutually agreed-to "Product Order Form," which the MLA defined as "a purchase order in the form of Schedule A issued to Licensor by GE with a specific reference to this Agreement [the MLA]." (*Id.* § 1.0.)   Moreover, the MLA indicated that if any restrictions were to be imposed on the use of BV's software, those restrictions, and any other "[a]dditional terms and conditions that are mutually agreed to in a Product Order Form may be added to any Product Order Form." (*Id.* § 12.0.)

Defendant The Medical Protective Company ("MedPro") is engaged in the business of providing professional liability insurance to persons in the medical field. (Cmpl. ¶ 11.)  Prior to July 1, 2005, MedPro was an indirect subsidiary of GE, "operated as a division, subsidiary or affiliate of Employers Reinsurance Corporation ('Employers Re'), which was, in turn, a division, subsidiary or affiliate of GE's 'Insurance Solutions' business unit." (*Id.* ¶ 12.)  At all times, MedPro and Employers Re were and are separately incorporated entities having their own corporate existence separate and apart from GE. (*Id.* ¶ 3; State of Ind. Cert. of Corp. Existence, Penchina Decl. Ex. C; State of Mo. Corp. Div. Cert. of Amendment, Penchina Decl. Ex. D.)[2]

In or about December 1999, acting under the MLA—but without entering with BV into a mutually agreed-to Product Order Form in the form of Schedule A—Employers Re obtained from BV a package of One-To-One software for use by itself and MedPro at the prices set forth

---

[2] "When ruling on a motion to dismiss, the Court may take judicial notice of records and reports of administrative bodies, items in the record of the case, matters of general public record, and copies of documents attached to the complaint." *Smart v. Goord*, 441 F. Supp. 2d 631, 637 (S.D.N.Y. 2006).  The Certificate of Existence issued by the State of Indiana Office of Secretary of State certifies that MedPro "commence[d] business activities under the laws of State of Indiana on December 02, 1909, and was in existence . . . on March 10, 2008." (Penchina Decl. Ex. C.)  Similarly, the Missouri Corporation Division Certificate of Amendment reflects that

*Continued on following page . . . .*

in Schedule A to the MLA.  (*Id.* ¶¶ 15-16, 18.)  Employers Re paid BV license fees of at least $970,000 for this software.  (*Id.* ¶ 15.)   BV's complaint does not identify any Product Order Forms or other agreements by and between either GE, Employers Re or MedPro, on the one hand, and BV on the other, which sets limits on the use of the software obtained under the MLA by Employers Re and MedPro.

"On or about July 1, 2005," Employers Re "sold MedPro to Columbia Insurance," and after that date MedPro no longer was indirectly owned by or affiliated with GE.  (*Id.* ¶ 22.) On September 30, 2005, BV entered into a separate agreement with MedPro governing MedPro's use of BV's software (the "MedPro Agreement").  By its own terms, the MedPro Agreement "constitutes the complete and exclusive agreement between the parties [MedPro and BV] with respect to the subject matter [t]hereof and supersedes all proposals, oral or written, all previous negotiations, and all other communications between the parties with respect to the subject matter [t]hereof."  (MedPro Agreement § 12(J), Ex. B to Penchina Decl.)  GE is not a party to the MedPro Agreement.

 "On or about June 12, 2006," GE sold its share of Employers Re, and after that date Employers Re no longer was owned by or affiliated with GE.  (Cmpl. ¶ 25.)  On April 5, 2007, BV conducted an audit of Employer Re's use of BV's software.  (*Id.* ¶ 29.)  The audit revealed that Employers Re was, in BV's view, using more copies of the software than had been licensed. (*Id.*)  BV's complaint asserts no claims against Employers Re.

---

*Continued from previous page . . . .*

Employers Reinsurance Corporation is a corporation organized and existing under the laws of the State of Missouri.  (*Id.* Ex. D).

On April 26, 2007, BV conducted an audit of MedPro relating to use of BV's software beginning September 30, 2005, and BV believes the audit has shown that MedPro has been using BV's software since that time in excess of rights BV granted to MedPro in the MedPro Agreement. (*Id.* ¶ 31.) BV has been unable to audit MedPro's use of its software prior to that time, but surmises that MedPro had exceeded applicable limits before September 30, 2005 as well. (*Id.* ¶ 34.)

BV's complaint does not identify *any* use made by GE, as distinct from MedPro or Employers Re, of BV's One-To-One software. Nevertheless, BV asserts a copyright infringement claim against GE as well as state-law claims premised on GE's supposed use of BV's software. For the reasons that follow, BV's claims against GE should be dismissed in their entirety.

## ARGUMENT

## I.    BV'S CLAIM FOR COPYRIGHT INFRINGEMENT FAILS TO STATE A BASIS FOR RELIEF AGAINST GE

In its First Claim for Relief, BV seeks to recover from GE for alleged infringements committed by MedPro and Employers Re, and not by GE. BV's claim is fatally defective on numerous grounds including that BV has failed to identify either any infringing conduct undertaken by GE or even the specific work allegedly infringed, BV's claims against GE are barred in whole or in part by the three-year statute of limitations applicable to copyright infringement claims, and any use of BV's software attributable to GE was, in any event, permitted under the express terms of the MLA. These deficiencies in BV's copyright claim are discussed below.

A.     **BV's Complaint Does Not Identify Any Infringing Conduct By GE and Does Not Sufficiently Identify the Copyrighted Work Allegedly Infringed**

"A properly plead[ed] copyright infringement claim must allege 1) *which specific original works are the subject of the copyright claim*, 2) that plaintiff owns the copyrights in those works, 3) that the copyrights have been registered in accordance with the statute, and 4) *by what acts during what time the defendant infringed the copyright*."  *Kelly v. L.L. Cool J.*, 145 F.R.D. 32, 36 (S.D.N.Y. 1992) (emphasis added), *aff'd*, 23 F.3d 398 (2d Cir. 1994); *see, e.g., Krasset v. Joseph E. Seagram & Sons, Inc.*, 2002 Copyright L. Dec. ¶ 28,514, 2002 WL 1997926, at *1 (S.D.N.Y. Aug. 29, 2002) (same).  BV has neither specified any infringing acts done *by GE* at any time, nor identified which of its copyrighted works allegedly were infringed.

1.     **No Infringing Acts Were Done By or Alleged Against GE**

BV's complaint fails to state a copyright infringement claim against GE because it fails to identify "by what acts during what time" GE supposedly infringed BV's copyrights.  The single allegation in the complaint that even arguably is intended to address GE's conduct is the statement that: "Defendants have infringed the copyright in BroadVision's One-To-One software by making and using copies of various portions thereof in excess of the number authorized by the MLA and the usage rights."  (Cmpl. ¶ 40.)  This assertion not only does not identify conduct undertaken by GE, as opposed to others, but is insufficient to state any claim as courts routinely have held.

For example, in *Marvullo v. Gruner & Jahr*, 105 F. Supp. 2d 225, 228 (S.D.N.Y. 2000), the court rejected as insufficient a nearly identical claim that attempted to "plead direct copyright infringement by alleging that the McNeely photograph 'was published by the Defendants beyond the scope and authority of the limited license.'"  The court found, in no uncertain terms, that "plaintiff's unadorned allegation in paragraph nine that defendants have published the McNeely

photograph 'beyond the scope . . . of the limited license,' absent any factual support, merely

states a legal conclusion insufficient to withstand a motion to dismiss." *Id*.; *see id*. at 228-29

("'A complaint which consists of conclusory allegations unsupported by factual assertions fails

even the liberal standard of Rule 12(b)(6),'" *quoting De Jesus v. Sears, Roebuck & Co.*, 87 F.3d

65, 70 (2d Cir. 1996)); *see, e.g., Lennon v. Seaman*, 2002 Copyright L. Dec. ¶ 28,375, 2002 WL

109525, at *6 (S.D.N.Y. Jan. 28, 2002) ("[D]efendant used only generic and imprecise language

in his pleading.  He alleges that 'by copying, publishing, distributing, selling and transferring the

Photographs' that plaintiff infringed his copyrights to the Photographs.  As such, defendant does

not enumerate particular instances of impermissible use and, therefore, does not satisfy the

requisite pleading elements for a copyright infringement claim."); *Reid v. Am. Soc'y of

Composers, Authors & Publishers*, 1994 Copyright L. Dec. ¶ 27,225, 1994 WL 3409, at *2-3

(S.D.N.Y. Jan. 5, 1994) ("[N]either complaint sets forth . . . by what act or acts and on what

dates ASCAP allegedly infringed Reid's copyright in these works" thus "ASCAP's motion,

pursuant to Rule 12(b)(6), to dismiss the Amended Complaint and the 2nd Amended Complaint

is granted.").

  BV has identified no acts, let alone the dates on which those acts allegedly took place, to

make out a claim of copyright infringement *against GE*.  BV did not identify how or when GE

reproduced or used any software at all, much less how any such use by GE went beyond the

rights granted to GE in the MLA.  At most, BV may have made sufficient allegations against

MedPro, but allegations against MedPro simply cannot state a claim against GE.  BV asserts that

it conducted an audit of Employers Re's software usage dating back to 2002, and an audit of

MedPro covering from 2005 forward, and that these audits have led BV to believe that

*Employers Re and MedPro* used BV's software in excess of some limits purportedly imposed by

BV.  (Cmpl. ¶¶ 29, 31, 34.)  Even if these allegations would be sufficient to state a claim against MedPro and Employers Re (notwithstanding that BV has not even sued Employers Re), these allegations do not relate to GE.  GE, MedPro and Employers Re are now and always have been separately incorporated entities.  (Penchina Decl., Exs. C & D).  BV's complaint contains no facts whatsoever to support piercing of their corporate veils in order to hold GE liable in the event MedPro or Employers Re made excess use of software given to them by BV.  *See, e.g., William Wrigley Jr. Co. v. Walters*, 890 F.2d 594, 600 (2d Cir. 1989) ("[T]he corporate veil will be pierced only when it can be demonstrated that the [corporate] form has been used to achieve fraud, or when the corporation has been so dominated by an individual . . . and its separate identity so disregarded, that it primarily transacted the dominator's business rather than its own and can be called the other's alter ego." (internal quotation marks omitted, brackets and ellipsis in original)).

In short, whatever the complaint may say about MedPro and Employers Re, it contains insufficient facts to state a copyright infringement claim against GE.

## 2.    BV Did Not Sufficiently Identify the Allegedly Infringed Works

To state a copyright infringement claim, BV was required to identify "which specific original works are the subject of the copyright claim."  *L.L. Cool J.*, 145 F.R.D. at 36.  BV has failed to do so.

Instead, BV asserts that the defendants "infringed the copyright in BroadVision's *One-To-One software* by making and using copies of *various portions thereof*." (Cmpl. ¶ 40 (emphasis added).)  As the complaint itself makes clear, "One-To-One" does not identify a single work, but refers to an entire "One-To-One family of computer software products ('One-To-One')."  (*Id.* ¶ 6.)  Indeed, the complaint identifies 16 separate copyright registrations for the individual works that comprise the "various portions and versions of the software licensed to

Defendants pursuant to the MLA." (*Id.* ¶ 38.)  The complaint does not identify which of the 16 individual works allegedly was infringed; rather, it merely states that "various portions" of the One-To-One software had been copied and used.  (*Id.* ¶ 40.)  The failure to identify which specific work, if any, actually had been used by GE is fatal to BV's claim.

"To state a claim for copyright infringement under . . . Rule 8, the Complaint must state 'which *specific* original work is the subject of the copyright claim . . . .'"  *Flynn v. Health Advocate, Inc.,* No. Civ. A. 03-3764, 2004 WL 51929, at *12 (E.D. Pa. Jan. 13, 2004) (emphasis in original), *quoting Gee v. CBS, Inc*., 471 F. Supp. 600, 643 (E.D. Pa.), *aff'd*, 612 F.2d 572 (3d Cir. 1979); *see, e.g., Bespaq Corp. v. Haoshen Trading Co.*, No. C 04-3698, 2005 WL 14841, at *2 (N.D. Cal. Jan. 3, 2005) (allegations insufficient "when plaintiff does not clearly identify the preexisting work" upon which the claim is based); *Home & Nature Inc. v. Sherman Specialty Co*., 322 F. Supp. 2d 260, 266 (E.D.N.Y. 2004) (complaint must allege "which specific original works form the subject of the copyright claim.").  "[M]erely alleging that Plaintiffs own certain copyrights and that Defendants have infringed on such copyrights in their written materials is insufficient to meet the . . . requirement of pleading in the Complaint the 'specific' original work that is the subject of the copyright claim."  *Flynn*, 2004 WL 51929, at *12.  Moreover, courts in this District have made clear that simply identifying a batch of works and asserting that defendants copied from those works does not cure the deficiency.  *See, e.g., Plunket v. Doyle*, No. 99 Civ. 11006, 2001 WL 175252, at *4 (S.D.N.Y. Feb. 22, 2001) ( "[A]llegations that defendant copied from any of six books lacked sufficient specificity," *citing Cole v. Allen*, 3 F.R.D. 236, 237 (S.D.N.Y. 1942)). The result should be no different here.

Because BV did not identify which of the 16 copyrighted works identified in the complaint allegedly had been copied and used by GE, its copyright infringement claim should be dismissed.

**B.    BV's Claims Are Barred in Whole or in Part by the Statute of Limitations**

Even if BV somehow could cure the other defects in its copyright claim against GE, the claim nevertheless should be dismissed in whole or in part as barred by the applicable statute of limitations.

BV asserts that "prior to November 16, 1999, GE acquired MedPro" (Cmpl. ¶ 12), and that "actual usage of the One-To-One software" allegedly exceeded license rights and thus was infringing "during GE's ownership of MedPro." (*Id.* ¶ 19.)  BV's complaint further alleges that the defendants "exceeded the Usage Rights between 2002 and 2005." (*Id.* ¶ 29.)  BV's complaint in this action, through which it seeks to recover from GE for those alleged infringements, was filed on February 13, 2008.

All copyright infringement claims are necessarily constrained by the three-year statute of limitations set forth in the Copyright Act: "No civil action shall be maintained under the provisions of this title unless it is commenced within three years after the claim accrued." 17 U.S.C. § 507(b).  Moreover, courts in this district have made clear that federal claims—including for copyright infringement—accrue when the allegedly wrongful act occurs, not when the plaintiff learns of the wrongful act.  *See, e.g.*, *Roberts v. Keith*, No. 04 Civ. 10079, 2006 WL 547252, at *3 (S.D.N.Y. Mar. 7, 2006) (the "injury" rule, rather than any "discovery" rule, "governs the application of the three-year statute of limitations" in copyright infringement cases); *Auscape Int'l v. Nat'l Geographic Soc'y*, 409 F. Supp. 2d 235, 247 (S.D.N.Y. 2004) ("[T]he legislative history of Section 507(b) makes it strikingly clear that Congress intended to adopt a three-year limitations period running from the date of the infringement, as a discovery

rule would have defeated its overriding goal of certainty.").[3]  In addition, the law is clear that "a party cannot reach back, based on acts of infringement that accrued within the limitations period, and recover for claims that accrued outside the limitations period."  *Hotaling v. Church of Jesus Christ of Latter-Day Saints*, 118 F.3d 199, 202 (4th Cir. 1997); *see, e.g., Stone v. Williams*, 970 F.2d 1043, 1049-50 (2d Cir. 1992) (" Recovery is allowed only for those acts occurring within three years of suit, and is disallowed for earlier infringing acts."); *Roley v. New World Pictures, Ltd*., 19 F.3d 479, 481 (9th Cir. 1994) ("[T]he statute bars recovery on any claim for damages that accrued more than three years before commencement of suit.").

In this case, BV seeks to recover against GE for alleged infringing acts taking place more than three years prior to the initiation of this suit, and those claims are barred by the statute of limitations.  Because its complaint was filed on February 13, 2008, BV is barred from pursuing claims relating to any infringing act that took place prior to February 13, 2005.  Although BV asserts that Employers Re and MedPro may have made infringing uses of its software *after* those entities were divested by GE "on or about July 1, 2005" (Cmpl. ¶ 22), the complaint identifies no infringing activity occurring between February 13, 2005 and July 1, 2005.  To the extent that any of the alleged infringing acts that could be attributable to GE began before February 13, 2005, those acts cannot be the basis for claims against GE as the Second Circuit has rejected the doctrine of continuing infringements.  *See, e.g., Stone*, 970 F.2d at 1049-50; *Hunter v. Squirrel*

---

[3] In *TRW Inc. v. Andrews*, 534 U.S. 19 (2001), the Supreme Court rejected the formerly prevalent view that federal courts should apply an injury rule only when explicitly adopted by Congress.  *See Auscape Int'l*, 409 F. Supp. 2d at 244.  Since *TRW*, cases in this district that have explicitly considered whether to apply an injury rule or a discovery rule have concluded an infringement claim accrues on the date of the alleged wrongful act, not the date of discovery.  *See, e.g.*, *Vasquez v. Torres-Negron*, No. 06 Civ. 619, 2007 WL 2244784, at *7 (S.D.N.Y. July 11, 2007).  Post-*TRW* decisions that refer to the discovery rule in infringement actions do not

*Continued on following page . . . .*

*Hill Assocs., L.P.*, 413 F. Supp. 2d 517, 521 (E.D. Pa. 2005) ("This Court is persuaded by the reasoning in the Ninth, Sixth, Fifth, and Second Circuits, which all . . . found that the statute bars recovery on any claims for damages which have accrued more than three years before the commencement of the suit."). To the extent that BV contends any infringing acts were committed by MedPro or Employers Re after they were divested by GE, those acts are not attributable to GE and simply cannot be the basis of any claims against GE.

Because BV's complaint identified no infringing acts attributable to GE within the statute of limitations period, BV's copyright infringement claim against GE is barred and should be dismissed.[4]

**C.    Any Use of BV's Software Was Permitted By The MLA and Was Therefore Non-Infringing**

In the event that BV could cure its pleading deficiencies and avoid the bar of the statute of limitations, its copyright infringement claim nevertheless should be dismissed on the independent ground that the challenged uses of BV's software expressly were permitted under the terms of the MLA. It is axiomatic that: "A copyright owner who grants a nonexclusive license to use his copyrighted material waives his right to sue the licensee for copyright infringement." *Graham v. James*, 144 F.3d 229, 236 (2d Cir. 1998); *see, e.g., Davis v. Blige*, 505 F.3d 90, 100 (2d Cir. 2007) ("A valid license . . . immunizes the licensee from a charge of

---

*Continued from previous page . . . .*

address the impact of *TRW*, and rely on cases that precede it. *See, e.g., Felix the Cat Prods., Inc. v. California Clock Co.*, No. 04 Civ. 5714, 2007 WL 1032267, at *2 (S.D.N.Y. Mar. 30, 2007).

[4] It is unclear from the face of BV's complaint whether BV is asserting that any acts within the statute of limitations period done by Employers Re are the basis of BV's claims against GE. The complaint contains *no* claims against Employers Re for any such activity. If BV has entered into a settlement agreement and release with Employers Re it would be inappropriate for BV to include references to Employers Re in its complaint in order to bring its ill-founded claims against GE within the statute of limitations.

copyright infringement, provided that the licensee uses the copyright as agreed with the licensor."). This does not mean that a licensee can never be sued for copyright infringement; rather, a copyright claim will lie when a licensee uses the subject work in excess of the rights granted. Here, however, all of BV's claims against GE are for uses that were licensed to GE under the MLA.

The entire basis of BV's copyright claim against GE is BV's belief that "Defendants have infringed the copyright in BroadVision's One-To-One software by making and using copies of various portions thereof in excess of the number authorized by the MLA and the Usage Rights." (Cmpl. ¶ 40.)[5] While a court should treat pleaded facts as true for the purposes of evaluating a motion to dismiss, the court need not accept, but should reject, conclusory assertions and legal conclusions. *See, e.g., De Jesus,* 87 F.3d at 70 ("A complaint which consists of conclusory allegations unsupported by factual assertions fails even the liberal standard of Rule 12(b)(6)."); *Leeds v. Meltz,* 85 F.3d 51, 53 (2d Cir. 1996)("[B]ald assertions and conclusions of law will not suffice."). Moreover, the Court need not accept BV's view of the license terms. *See, e.g., Int'l Audiotext Network*, 62 F.3d at 72 (in assessing motion to dismiss, court is "not constrained to accept the allegations of the complaint in respect of the construction of the Agreement"). BV's assertion that GE acted in excess of the scope of its license is a bald legal conclusion, devoid of supporting facts, and does not state any claim for which relief may be granted.

Contrary to BV's assertion, review of the MLA demonstrates that it does not limit the number of authorized copies or users of the One-To-One software. The MLA expressly states

---

[5] BV also separately asserts that MedPro infringed BV's copyright by using BV's software beyond limits set in the MedPro Agreement. (Cmpl. ¶ 41.) This assertion does not relate in any way to GE, and cannot be the basis of a claim against GE.

that: "Licensor [BV] grants and agrees to grant GE a non-exclusive perpetual, non-transferable (except as set forth in this Agreement), worldwide license(s) *to use and/or reproduce Software* on Computers and Networks under the terms of this Agreement."  (MLA § 3.1 (emphasis added).)  Nothing in the MLA detracts from this broad grant by setting any limit on the number of copies or uses GE may make of the licensed software.  Moreover, nothing in the MLA makes BV's grant of rights to GE conditional.

Schedule A to the MLA sets forth the form of agreement that BV was supposed to—*but did not*—enter into with MedPro and Employers Re to establish any limitations on their use of the software sold to them by BV.  Schedule A also contains formulas for determining license fees payable to BV based on the extent of usage of BV's software.  While the MLA thus may arguably give rise to an obligation to pay BV, any failure to make such payment does not transform the licensed use into an infringement of copyright.  *See, e.g., U.S. Naval Inst. v. Charter Commc'ns, Inc.*, 936 F.2d 692, 695 (2d Cir. 1991) ("[L]icensee of any of the rights comprised in the copyright, though it is capable of breaching the contractual obligations imposed on it by the license, cannot be liable for infringing the copyright rights conveyed to it.").

For instance, in *Graham v. James*, 144 F.3d 229, the plaintiff asserted that uses made by his licensee, which uses were authorized by the parties' agreement, constituted infringements because the licensee failed to pay royalties.  The court disagreed, stating that "'[i]f the [licensee's] improper conduct constitutes a breach of a covenant undertaken by the [licensee] . . . and if such covenant constitutes an enforceable contractual obligation, then the [licensor] will have a cause of action for breach of contract,' not copyright infringement."  *Id.* at 236 (brackets and ellipsis in original), *quoting* 3 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 10.15[A], at 10-120.  The court held that "the payment of royalties and the inclusion of a notice

crediting James's authorship are to be considered covenants, not conditions," because it is black-letter New York contract law that "contract obligations that are to be performed after partial performance by the other party are not treated as conditions." *Graham*, 144 F.3d at 237. The court accordingly rejected the plaintiff's claim that failure to pay royalties transformed defendant's use of the work into copyright infringement. *Id.* at 237.

The result should be no different here. BV and GE are parties to the MLA, which is governed by New York law. (Penchina Decl. Ex. A, MLA § 19 (MLA "shall be interpreted and governed by the laws of the State of New York.").) Pursuant to the MLA, BV granted GE the right to reproduce and use BV's One-To-One software, and BV partially performed under the MLA by supplying its software to Employers Re and MedPro, among other things. (Cmpl. ¶¶ 15-18.) Thus, any obligation to pay BV is a covenant, and the license granted to GE is not conditional upon full payment. To the extent BV believes that it "is entitled to recover the reasonable value of Defendants' usage of the One-To-One software" in excess of that for which BV already has been paid (Cmpl. ¶ 55), BV might have a claim for breach of a payment obligation under a contract, but it did not and cannot state a claim for copyright infringement. *Ariel (UK) Ltd. v. Reuters Group, PLC*, No. 05 Civ. 9646, 2006 WL 3161467, at * 1 (S.D.N.Y. Oct. 31, 2006) ("Because the defendants are valid licensees of the copyrights that Ariel claims to own and therefore cannot be sued for copyright infringement, the Court dismisses Ariel's copyright claims with prejudice.").

While, as a theoretical matter, BV may be able to assert a claim that a failure to pay BV constituted a breach of contract, BV has made no such claim here. Instead, BV asserted that GE breached the MLA by using BV's software beyond the limits set by the MLA. As discussed

below, that type of breach of contract claim—in contrast to a claim for breach of a payment

obligation—is preempted by the Copyright Act.

## II.    BV'S STATE LAW CLAIMS ARE PREEMPTED BY THE FEDERAL COPYRIGHT LAW

BV's complaint attempts to plead three state-law causes of action against GE all based on

allegations that GE purportedly copied and used BV's software in excess of rights licensed to GE

under the MLA.[6]   Because all three of these claims seek remedies under state law for purported

violations equivalent to rights protected under copyright in connection with BV's copyrighted

software, these claims expressly are preempted by Section 301 of the Copyright Act, 17 U.S.C.

§ 301, and should be dismissed.

The Supreme Court has made clear that "state law is preempted when it enters 'a field of

regulation which the [applicable federal] laws have reserved to Congress.'"  *Summit Mach. Tool*

*Mfg. Corp. v. Victor CNC Sys., Inc.*, 7 F.3d 1434, 1439 (9th Cir. 1993) (*quoting Bonito Boats*

*Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 167 (1989)).   Section 301 of the federal

copyright statute expressly reserves to Congress the field of regulation over claims relating to

works of authorship which claims seek to vindicate rights equivalent to those provided by the

copyright law.  *See, e.g., Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 740 (1989)

(Copyright Act creates uniform law "by broadly pre-empting state statutory and common-law

copyright regulation").  Thus, Section 301 states, in pertinent part:

---

[6] BV's Second Claim for Relief contends that GE "breached the MLA by making copies of and using the One-To-One software in excess of the Usage Rights licensed." (Cmpl. ¶ 45.) BV's complaint contains two different counts each denominated "Fourth Claim for Relief."  The first of these seeks to assert a claim for *quantum meruit* based on allegations that "Defendants used the One-To-One software in excess of the Usage Rights."  (*Id.* ¶ 53.)  The second is an attempted claim for unjust enrichment based on "Defendants' copying and use of the One-To-One software in excess of the Usage Rights licensed and paid for."  (*Id.* ¶ 59.)

> [A]ll legal or equitable rights that are equivalent to any of the
> exclusive rights within the general scope of copyright as specified
> by § 106 in works of authorship that are fixed in a tangible
> medium of expression and come within the subject matter of
> copyright as specified by sections 102 and 103, . . . are governed
> exclusively by this title.  [N]o person is entitled to any such right
> or equivalent right in any such work under the common law or
> statutes of any State.

17 U.S.C. § 301(a).

Copyright preemption applies when (1) "the particular work to which the claim is being applied falls within the type of works protected by the Copyright Act," and (2) "the claim seeks to vindicate legal or equitable rights that are equivalent to one of the bundle of exclusive rights already protected by copyright law." *Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 305 (2d Cir. 2004).  A claim is preempted unless it includes an extra element that makes it "qualitatively different from a copyright infringement claim," *id.* at 305-06, and the "extra element," must be something in addition "'to the acts of reproduction, performance, distribution or display.'"  *Nat'l Basketball Ass'n v. Motorola, Inc.*, 105 F.3d 841, 851 (2d Cir. 1997).  The Second Circuit has taken "a restrictive view of what extra elements transform an otherwise equivalent claim." *Briarpatch*, 373 F.3d at 306; *accord Nat'l Basketball Ass'n*, 105 F.3d at 851 (test does not "allow state claims to survive preemption easily").  Although the doctrine of preemption may sometimes leave a plaintiff without a remedy, that is not an unintended consequence, but the method which Congress chose to ensure uniformity of the copyright law. *Cf. Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 349 (1991) ("It may seem unfair that much of the fruit of the compiler's labor may be used by others without compensation. . . . [H]owever, this is not some 'unforeseen byproduct of a statutory scheme.'  It is, rather, 'the essence of copyright . . . .'" (citations omitted)).

Here, BV's claims relate to a type of work, specifically software, squarely within the protection of the Copyright Act, and assert rights equivalent to those set forth in Section 106 of the Copyright Act, specifically the rights to reproduce and use BV's software. They all seek remedies for "an act that would, by itself, infringe one of the exclusive rights provided by federal copyright law," and are thus preempted. *Briarpatch Ltd.*, 373 F.3d at 305.

## A.    BV's Breach of Contract Claim is Preempted

Of course, not all breach of contract claims are preempted by the copyright law. When a contract claim seeks to enforce a contract right that is different in kind from the rights protected by copyright, such as claims alleging the failure to pay an agreed upon fee, preemption does not apply. *See, e.g.*, *Architectronics, Inc. v. Control Sys., Inc.*, 935 F. Supp. 425, 438-41 (S.D.N.Y. 1996) (no preemption of agreement to pay a royalty). However, preemption applies with full force when the alleged breach is simply an unauthorized reproduction or use of a copyrighted work, a right squarely addressed by the Copyright Act.

The only contract claim BV has asserted against GE is that GE allegedly "breached the MLA by making copies of and using the One-To-One software in excess of the Usage Rights licensed." (Cmpl. ¶ 45.) Thus, the basis for BV's contract claim is identical to its copyright infringement claim. Because the only contract term at issue in BV's claim against GE is an alleged promise not to reproduce or use copyrighted works without further authorization, the claim is preempted.[7]

---

[7] BV makes additional breach of contract claims against MedPro, including that MedPro breached an obligation under the MLA to permit BV to conduct an audit, and that MedPro breached the MedPro Agreement (to which GE is not a party). Those claims do not involve GE. The preemption analysis may be different with respect to an audit right, which is not equivalent to any rights under copyright, than it is with a contractual obligation not to copy, which is equivalent.

For example, in *American Movie Classics Co. v. Turner Entertainment Co.*, 922 F. Supp. 926, 932 (S.D.N.Y. 1996), plaintiff sued for the breach of a licensing agreement after defendant exhibited a film over which plaintiff had exclusive distribution rights. This Court confirmed that "a breach of contract claim is preempted if it is merely based on allegations that the defendant did something that the copyright laws reserve exclusively to the plaintiff (such as unauthorized reproduction, performance, distribution or display)." *Id.* at 931; *see also, e.g., Madison River Mgm't Co. v. Bus. Mgm't Software Corp.*, 351 F. Supp. 2d 436, 444 (M.D.N.C. 2005) (contract claim alleging wrongful reproduction and distribution preempted); *Wolff v. Inst. of Electrical & Electronic Eng'rs, Inc.*, 768 F. Supp. 66, 69 (S.D.N.Y. 1991) (contract claim preempted).

So also here, BV's breach of contract claim is based solely on allegations that GE copied and used software without authorization. There is no "extra element" that secures any right that is "qualitatively different" from those protected by the Copyright Act – BV's contract claim is "a subterfuge to control nothing other than the reproduction, adaptation, public distribution, etc. of works within the subject matter of copyright." *Selby v. New Line Cinema Corp.*, 96 F. Supp. 2d 1053, 1061 (C.D. Cal. 2000) (quoting 1-1 *Nimmer on Copyright* § 1.01[B][1][a], at 1-19 & 1-22 (Dec. 1997 rel.)); *see also Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 457 (6th Cir. 2001) ("a promise to refrain from reproducing, performing, distributing or displaying the work" is preempted). BV's contract claim against GE is thus preempted.

### B.    BV's Quantum Meruit and Unjust Enrichment Claims Are Preempted

Like its copyright and contract claims, the basis of BV's *quantum meruit* and unjust enrichment claims is that "Defendants used the One-To-One software in excess of the Usage Rights" (Cmpl. ¶ 53 (*quantum meruit*)), and that "Defendants have . . . copied and used the One-To-One software in excess of the Usage Rights." (*Id.* ¶ 61 (unjust enrichment).) Thus, these

claims also do no more than seek additional remedies for the same alleged acts that give rise to a claim for copyright infringement.

The law in this Circuit is clear that claims sounding in unjust enrichment seeking to recover for uncompensated use of a copyrighted work are preempted by Section 301 of the Copyright Act, 17 U.S.C. § 301.  *See, e.g., Briarpatch Ltd.,* 373 F.3d at 307 ("'[A] state law cause of action for unjust enrichment . . . should be regarded as an "equivalent right" and hence, pre-empted insofar as it applies to copyright subject matter.'" (*quoting* 1 *Nimmer on Copyright* § 1.01[B][1][g] (2003)); *Orange County Choppers, Inc. v. Olaes Enters., Inc.,* 497 F. Supp. 2d 541, 556 (S.D.N.Y. 2007) ("[U]njust enrichment claim is dismissed because it is preempted by the Copyright Act."); *Netzer v. Continuity Graphic Assocs., Inc.*, 963 F. Supp. 1308, 1322 (S.D.N.Y. 1997) ("While Defendants may have been enriched by the exploitation of [the work], Netzer's claim of unjust enrichment is preempted by the federal Copyright Act."); *Stewart v. World Wrestling Fed. Entm't, Inc.*, 74 U.S.P.Q.2d 1024, 2005 WL 66890, at *5 (S.D.N.Y. Jan. 11, 2005) ("The overwhelming majority of courts in this circuit have held that an unjust enrichment claim based upon the copying of subject matter within the scope of the Copyright Act is preempted." (internal quotation marks omitted)).

Likewise, claims sounding in *quantum meruit* are preempted.  *See, e.g., Briarpatch Ltd.,* 373 F.3d at 307 ("[A] state law cause of action for . . . quasi contract should be regarded as an "equivalent right" and hence, pre-empted insofar as it applies to copyright subject matter." (internal quotation marks and citation omitted); *Master Sound Int'l, Inc. v. Polygram Latino U.S.*, 50 U.S.P.Q.2d 1859, 1999 WL 269958, at *3 (S.D.N.Y. May 4, 1999) ("Polygram argues that the plaintiff's claims for unjust enrichment and *quantum meruit* must be dismissed because, under the law of this Circuit, they are preempted by the Copyright Act.  The Court agrees.");

*Strauss v. The Hearst Corp.*, 8 U.S.P.Q.2d 1832, 1988 WL 18932, at *9, 10 (S.D.N.Y. Feb. 19, 1988) ("Plaintiff's complaint also asserts theories of unjust enrichment and *quantum meruit*. . . . Plaintiff's rights asserted here are not 'qualitatively different' or 'different in kind' from those protected by the Copyright Act and are therefore preempted by federal law.").

Because BV's unjust enrichment and *quantum meruit* claims merely seek additional remedies for rights not qualitatively different than those protected by the Copyright Act, these claims are preempted by federal law and should be dismissed.

## III.   BV HAS FAILED TO PLEAD THE ELEMENTS NEEDED TO SUPPORT ITS STATE LAW CLAIMS

In addition to the fact that they are preempted by federal law, BV's state law claims are subject to dismissal on the independent ground that BV has not pleaded the elements required to make out a claim for breach of contract, unjust enrichment or *quantum meruit*.

As discussed above, each of these claims is based on BV's bare-bones legal conclusion that GE "cop[ied] and use[d] the One-To-One software in excess of the Usage Rights." (Cmpl. ¶¶ 45, 53, 59). First, as discussed above, because BV's allegations are merely legal conclusions that GE allegedly exceeded the scope of a license, they are insufficient to state any claim. *See, e.g., Marvullo*, 105 F. Supp. 2d at 228 ("unadorned allegation[s]" that a defendant copied and used a work "'beyond the scope . . . of the limited license,' absent any factual support, merely states a legal conclusion insufficient to withstand a motion to dismiss."). Second, BV did not identify any acts of reproduction or use of its software *by GE*. Thus, on its face, BV's complaint is insufficient to make out the state-law claims it purports to allege *against GE*. Third, the MLA does not limit the number of authorized copies or users. Rather, the MLA expressly granted GE the right "*to use and/or reproduce Software*" without limitation on the number of copies or users.

Thus, GE did *not* breach the MLA, GE *cannot be liable* to BV for unjust enrichment or *quantum meruit*, and BV's complaint contains no facts from which to conclude otherwise.

Because all of BV's state-law claims against GE are based on BV's faulty reading of the MLA, and its complaint provides no facts whatsoever which, even if true, could establish either a breach of contract by GE or liability for unjust enrichment or *quantum meruit*, those claims should be dismissed.

## CONCLUSION

For the foregoing reasons, BV's claims against GE should be dismissed with prejudice in their entirety, and BV should be ordered to pay GE's costs and fees incurred in this action, together with such other and further relief the Court deems just and proper.

Dated: March 12, 2008
      New York, New York

 

Respectfully submitted,

LEVINE SULLIVAN KOCH & SCHULZ, L.L.P.

By:   /s/ Robert Penchina
     Robert Penchina

321 West 44th Street, Suite 510
New York, NY 10036
(212) 850-6100

*Attorneys for Defendant*
*General Electric Company*