UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -   x

BROADVISION, INC.,                                : Index No. 08-CV-1478 (WHP)
                                                  :
                  Plaintiff,                      : ECF Case
         -against-                                :
                                                  :
GENERAL ELECTRIC COMPANY and THE                  :
MEDICAL PROTECTIVE COMPANY,                       :
                                                  :
                  Defendants.                     :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -   x


**REPLY MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT GENERAL ELECTRIC COMPANY'S
<u>MOTION TO DISMISS</u>**


                                    Robert Penchina
                                    **LEVINE SULLIVAN KOCH & SCHULZ, L.L.P.**
                                    321 West 44th Street, Suite 510
                                    New York, NY 10036
                                    (212) 850-6100

                                    *Attorneys for Defendant*
                                    *General Electric Company*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................... 1

ARGUMENT .......................................................................................................................... 2

I.  BV HAS NO COPYRIGHT INFRINGEMENT CLAIM AGAINST GE ....................... 2

II. BV HAS NOT SHOWN ANY BASIS FOR ITS STATE LAW CLAIMS
    TO ESCAPE PREEMPTION BY THE FEDERAL COPYRIGHT LAW ..................... 7

CONCLUSION ..................................................................................................................... 10

## **TABLE OF AUTHORITIES**

### **CASES**

*Architectronics, Inc. v. Control Systems, Inc.*, 935 F. Supp. 425 (S.D.N.Y. 1996) ....................... 9

*Banff Ltd. v. Limited, Inc.*, 869 F. Supp. 1103 (S.D.N.Y. 1994) .................................................. 6

*Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007) ............................................................ 10

*Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296 (2d Cir. 2004) .............................. 7

*Brignoli v. Balch Hardy & Scheinman, Inc.*, 645 F. Supp. 1201 (S.D.N.Y. 1986) ....................... 9

*Frank Music Corp. v. Metro-Goldwyn-Mayer Inc.*, 886 F.2d 1545 (9th Cir. 1989) .................. 5, 6

*Galiano v. Harrah's Operating Co.*, 71 U.S.P.Q. 2d 1265, 2004 WL 1057552
    (E.D. La. May 10, 2004) ........................................................................................................ 3, 4

*Gen-Probe, Inc. v. Amoco Corp.*, 926 F. Supp. 948 (S.D. Cal. 1996) .......................................... 3

*eScholar, LLC v. Otis Educational Systems, Inc.*, 387 F. Supp. 2d 329 (S.D.N.Y. 2005) ............. 8

*Lennon v. Seaman*, 63 F. Supp. 2d 428 (S.D.N.Y. 1999) ......................................................... 8-10

*Marvullo v. Gruner & Jahr*, 105 F. Supp. 2d 225 (S.D.N.Y. 2000) ............................................. 6

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913 (2005) ............................... 4

*Parker v. Google, Inc.*, 422 F. Supp. 2d 492 (E.D. Pa. 2006), *aff'd*,
    242 F. App'x 833 (3d Cir. 2007) ................................................................................................. 2

*Peter Pan Fabrics, Inc. v. Acadia Co.*, 173 F. Supp. 292 (S.D.N.Y. 1959) .............................. 5, 6

*Sony Corp. v. Universal City Studios, Inc.*, 464 U.S. 417 (1984) ................................................. 4

*Torah Soft Ltd. v. Drosnin*, 224 F. Supp. 2d 704 (S.D.N.Y. 2002) .............................................. 9

## PRELIMINARY STATEMENT

In its submission, plaintiff BroadVision, Inc. ("BV") has utterly failed to identify any copying or use of BV's software by GE. Instead, BV confirms that its copyright infringement claim *against GE* is based on copying allegedly *committed by someone else*—defendant Medical Protective Company ("MedPro"). Having failed to state viable claims in its complaint, BV's opposition focuses on theoretical claims that were not asserted. Thus, although the complaint only attempted to plead a direct infringement claim against GE, BV now argues that GE should be liable "under a theory of vicarious liability." (Opp. 2). However, BV's complaint does not even mention the word "vicarious," much less plead any facts whatsoever to satisfy the elements of vicarious copyright infringement. Similarly, BV now contends that it has "a claim here for breach of contract for failure to pay for the software used." (*Id.* at 17). Not only does BV possess no such claim against GE, no such claim even is pleaded.

Glaringly, although all of BV's claims are based on BV's conclusory legal assertion that GE somehow exceeded limitations placed on it by the Master License Agreement ("MLA"), BV does not identify *any* provision of the MLA imposing any limits on the number of copies or users permitted under the MLA. Instead, BV circularly argues that its clear grant to GE of "a non-exclusive, perpetual . . . worldwide license(s) to use and/or reproduce software on Computers and Networks under the terms of this Agreement" limits the number of permissible users and copies because "[t]he language 'under the terms of this Agreement' makes it clear that the license is limited to use in compliance with the MLA." (*Id.* at 16). There simply are *no terms* of the MLA that limit the number of copies or users, and BV did not and cannot identify any limit-setting clause in the MLA with which GE was not in compliance.

Rather than identifying pleaded facts capable of supporting its claims, BV's submission confirms the utterly speculative nature of BV's complaint against GE. In BV's view, because its

1

audit of a third party had shown that the third party "exhausted and exceeded" usage rights (for which BV was made whole by settling with that third party), BV surmises that MedPro likewise exceeded usage rights, and therefore GE must also have. However, BV's complaint establishes no factual basis, and there is no legal basis, for finding GE liable to BV under any theory. As shown in GE's initial memorandum of law, all of BV's claims against GE should be dismissed.

## ARGUMENT

### I. BV HAS NO COPYRIGHT INFRINGEMENT CLAIM AGAINST GE

BV does not deny that its complaint fails to identify any infringing acts purportedly *committed by GE*. Instead, it argues that "General Electric is responsible for MedPro's acts." (Opp. 11). However, to state a claim for direct infringement *against GE*, BV must identify infringing acts allegedly undertaken *by GE*. *See, e.g., Parker v. Google, Inc.*, 422 F. Supp. 2d 492, 497 (E.D. Pa. 2006) ("[A] plaintiff must also show volitional conduct on the part of the defendant in order to support a finding of direct copyright infringement."), *aff'd*, 242 F. App'x 833 (3d Cir. 2007).

BV contends that because the MLA defined GE to "encompass all of its subsidiaries and affiliates" so that all of those companies could "receive the extremely favorable pricing [BV] was offering," somehow GE should be deemed a direct infringer. (Opp. 11-12). However, BV well knows that GE did not assume responsibility for the acts of its subsidiaries under the MLA. Thus, BV only weakly suggests that "*in effect* General Electric, the parent, agreed to be responsible for its subsidiaries' . . . use of [BV's] software." (Opp. 12 (emphasis added); *see id*. 4). Nowhere in the MLA did GE take on any obligation to stand in the shoes of its affiliates with respect to their dealings with BV. Quite to the contrary, the MLA provides that BV "shall sell to GE Businesses"—defined as "an individual operating business or division of GE"—and that BV "shall invoice the GE Business," not GE. (MLA §§ 12, 1, 13 (Ex. A to Penchina Dec.)).

2

Although BV would have the Court believe that GE bought and used software from BV, the invoice for the sale of the software at issue which BV has submitted confirms that the sale was not to GE but *Employers Reinsurance Corp.*, an entity not included in this suit. (Ex. A to Prutzman Aff.).

Irrespective of whatever effect the definition of GE in the MLA may have on contractual rights flowing from that agreement, however, the definition is immaterial to a claim for copyright infringement. BV did not cite a single authority holding that a party could *directly* be liable for copyright infringement committed by someone else no matter how the two parties were defined in a license agreement. Simply put, because GE committed no acts of infringement, BV cannot hold GE directly liable for copyright infringement.

However, direct infringement *is the only claim* BV attempted to assert. Although BV now argues that GE should be "vicariously liable for its subsidiary's infringement," neither the words nor the concept of "vicarious liability" is mentioned in the complaint. It is fundamental that "direct infringement, contributory infringement and vicarious liability are separate causes of action and each requires separate elements of proof." *Galiano v. Harrah's Operating Co.*, 71 U.S.P.Q.2d 1265, 2004 WL 1057552, at *10 (E.D. La. May 10, 2004); *see, e.g., Gen-Probe, Inc. v. Amoco Corp.*, 926 F. Supp. 948, 962 (S.D. Cal. 1996) ("Direct infringement, contributory infringement, and inducement of infringement are three different causes of action" (patent case)).

For example, in *Galiano*, as here, a plaintiff who had asserted a claim for infringement in his complaint argued in opposition to a motion to dismiss that "even if Harrah's did not directly infringe on Gianna's copyrighted work, it is still liable for 'contributory infringement,' or is vicariously liable for All-Bilt's infringement." *Galiano*, 2004 WL 1057552, at *10. Rejecting that contention, the court stated that the plaintiff's "original and amended complaints are clearly

3

addressed to Harrah's alleged 'use' of the uniform designs . . . . There is no allegation of contributory infringement or vicarious liability. . . . It merely alleges that Harrah's 'ordered' and 'appropriated and used' the designs. [Thus,] Gianna's complaint and amended complaints failed to allege facts supporting the necessary elements of . . . vicarious liability." *Id*. at *12-13.

The result should be no different here. BV's complaint conclusorily asserts that GE "infringed the copyright in BroadVision's One-To-One software by making and using copies of various portions thereof," and nothing more. (Cmpl. ¶ 40). There are no pleaded facts that could satisfy the elements of a claim for vicarious infringement.

BV would have the Court believe that a parent corporation should be liable for infringements committed by its separately incorporated subsidiaries simply "where there is 'a substantial and continuing connection between a parent and its subsidiary.'" (Opp. 13). Such is not the law, and BV's argument is not supported by the authority it cites. First, BV cites two cases for the proposition that "the Supreme Court has made clear that in appropriate circumstances the Copyright Act imposes liability for infringing acts committed by others." (*Id*.). However, the circumstances that the Supreme Court recognized as supporting secondary liability are where the elements for contributory or vicarious liability are met, not where there simply is an ongoing parent/subsidiary connection. *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005) (analyzing how "[o]ne infringes contributorily . . . , and [one] infringes vicariously"); *Sony Corp. v. Universal City Studios, Inc.*, 464 U.S. 417, 442 (1984) ( "[T]he sale of copying equipment, like the sale of other articles of commerce, does not constitute *contributory infringement* if the product is widely used for legitimate, unobjectionable purposes" (emphasis added)).

4

BV then relies on two cases, decided under the Copyright Act of 1909, and not the current statute, and omits discussion of the significant aspects of the rulings.[1] (Opp. 13). Those cases did not find liability based on the parent/subsidiary relationship of co-defendants, but based on the parent companies' own infringing conduct in conjunction with infringing conduct committed by the subsidiaries. Thus, in *Peter Pan Fabrics*, the court was swayed by the fact that "there was a substantial and continuing connection between [the parent company] *and the printed fabric that infringes plaintiff's copyright*." 173 F. Supp. at 299 (emphasis added); *see id*. at 298 ("Weiner was substantially connected with the infringing transaction and the course of conduct to be enjoined."). Liability was based not on a continuing connection between parent and subsidiary but on the fact that "the alleged inspiration of defendant's design" was found in an envelope bearing the parent's name and address, the response to plaintiff's notice of infringement was sent by the parent on the parent's letterhead, the parent admitted that "we prepared our design many months ago [i.e., before the subsidiary's involvement which began only two months earlier]," among many other factors. *Id*. at 298-99.

Likewise, in *Frank Music*, liability was based on the parent's own acts including that the person who created the infringing show was selected to do so by the parent and had his office within the parent's offices (not at the subsidiary's), the parent's legal counsel responded to inquiries about use of the infringing material, the parent exhibited for the creator of the infringing show the infringed work which the copyist "viewed . . . in a production room" at the parent's facility, and the creator of the infringing work "used material and was assisted by

---

[1] *Frank Music Corp. v. Metro-Goldwyn-Mayer Inc.*, 886 F.2d 1545, 1551 (9th Cir. 1989) (analyzing 1909 Act); *Peter Pan Fabrics, Inc. v. Acadia Co.*, 173 F. Supp. 292 (S.D.N.Y. 1959) (decided long before the effective date of Copyright Act of 1976).

5

employees from [the parent's] music library" when creating the infringing show. 886 F.2d at 1553. The statement quoted by BV was not used by the court in either cited case as a rule to determine when secondary liability *should* attach, but was an admonition to those, like BV, who would have liability attach merely based upon a parent/subsidiary relationship: "[A] parent corporation cannot be held liable for the infringing actions of its subsidiary unless there is a substantial and continuing connection between the two *with respect to the infringing acts*." *Id*.; *see, e.g., Banff Ltd. v. Limited, Inc.*, 869 F. Supp. 1103, 1108 (S.D.N.Y. 1994) (interpreting *Peter Pan Fabrics* as "suggesting that a showing of involvement with the infringement beyond one's mere status as parent was required").

To hold a parent liable for infringing acts of its subsidiary, "there must be indicia beyond the mere legal relationship showing that the parent is actually involved with the decisions, processes or personnel directly responsible for the infringing activity." *Id*. at 1109. BV's complaint merely identifies GE as the former parent of MedPro. It does not allege the type of joint conduct present in *Peter Pan Fabrics* and *Frank Music.* Accordingly, there is no basis whatsoever for holding GE liable for any infringing acts committed by MedPro.

Furthermore, BV's submission did not address either BV's complete failure to identify any allegedly infringing acts or the holdings of courts in this District finding that allegations, such as made by BV, which assert nothing more than that a defendant made use of a work "beyond the scope and authority of the limited license" are "insufficient to withstand a motion to dismiss." *Marvullo v. Gruner & Jahr*, 105 F. Supp. 2d 225, 228 (S.D.N.Y. 2000); *see* GE Initial Mem. At 7-8.[2] For this reason alone, BV's claims against GE can and should be dismissed.

---

[2] BV's failure to identify even a single infringing act, let alone the dates on which such act occurred, is not cured by BV's contention when addressing the statute of limitations that "[a]

*Continued on following page . . . .*

And, contrary to BV's argument, it has failed to identify the allegedly infringed work. As the MLA states, "BroadVision offers five applications products—BroadVision One-To-One Enterprise ["the Company's base product"], One-To-One Retail Commerce ["an enterprise-class application solution for the rapid deployment and dynamic personalization of high transaction Internet commerce sites"], One-To-One Business Commerce ["a comprehensive administrator desktop giving buyers the ability to administer users, groups and receipts], One-To-One Financial ["an enterprise-class financial services solution"], and One-To-One Knowledge ["an enterprise-class application designed to dramatically increase the productivity of corporate knowledge workers"]." (MLA Schedule A at 19-21 (Ex. A to Penchina Dec.)). As BV concedes, its complaint merely "identifies the infringed work as the One-To-One software." (Opp. 14). It nowhere identifies which of the specific "applications products," nor which works covered by "the sixteen registration certificates" (Opp. at 14-15), were used in excess of a license grant.

Accordingly, BV's copyright claim against GE should be dismissed.

## II. BV HAS NOT SHOWN ANY BASIS FOR ITS STATE LAW CLAIMS TO ESCAPE PREEMPTION BY THE FEDERAL COPYRIGHT LAW

In arguing that its breach of contract claim against GE escapes preemption, BV attempts to rewrite both its claim and the cases it relies on. Not all breach of contract claims involving copyrighted works are preempted—only those that seek to enforce contract rights equivalent to "one of the bundle of exclusive rights already protected by copyright law." *Briarpatch Ltd., L.P.*

---

*Continued from previous page . . . .*

copy of software is made whenever the software is used, causing the computer to copy it to Random Access Memory." (Opp. 18). Whether or not that is true, BV did not identify a single instance in which GE (or even MedPro) actually used the software.

*v. Phoenix Pictures, Inc.*, 373 F.3d 296, 305 (2d Cir. 2004). BV takes pains to argue that the MLA specified that BV "may audit GE's records," and obligated GE to "pay [BV's] reasonable costs of conducting the audit," under certain conditions, and that "[a] breach of contract claim must survive to the extent it seeks to enforce contractual rights to audit books and receive royalt[ies]." (Opp. 21, 23). However, BV's complaint *does not assert that GE breached the audit provision or a provision obligating GE to pay royalties.* Rather, the entirety of BV's contract claim against GE is that "Defendants have breached the MLA **by making copies of and using the One-To-One software in excess of the Usage Rights licensed**." (Cmpl. ¶ 45 (emphasis added)). Separately, BV pleads that "Defendant *MedPro* has breached the MLA by refusing to comply with the audit provisions thereof," but that assertion is immaterial to the claim asserted against GE. (*Id.* ¶ 46 (emphasis added)).[3]

BV argues that the "the promise inherent in a contractual agreement, by itself, provides the 'extra element'" needed to make a claim qualitatively different from copyright so as to avoid preemption, citing *eScholar, LLC v. Otis Educ. Sys., Inc.*, 387 F. Supp. 2d 329, 332 (S.D.N.Y. 2005). (Opp. 22). But in *eScholar* the defendant's motion to dismiss a breach of contract claim was "*granted* to the extent it seeks to enforce Plaintiff's exclusive right *to reproduce and distribute its work*." *Id.* at 332 (emphasis added). eScholar's contract claim survived *only* to the extent "it seeks to enforce contractual rights to audit books and receive royalty fees," contract rights not equivalent to rights under the Copyright Act. *Id.* at 333.

The other cases BV cites likewise do not support BV's assertion. In *Lennon v. Seaman*, 63 F. Supp. 2d 428, 438 (S.D.N.Y. 1999), the court expressly avoided resolving the issue of

---

[3] In any event, the complaint makes clear that BV procured "GE's express consent to its audit of the relevant records" (Cmpl. ¶ 32) and there was no breach of any audit provision *by GE*.

8

whether a contractual promise, standing alone, is sufficient to avoid preemption. Instead, the court found the contract claim at issue avoided preemption, not because all contract claims escape preemption as BV argues, but because the court "read the breach of contract claim to be seeking to enforce the plaintiff's bargained-for right not to have certain information disclosed to others, rather than as the copyright law provides, to enforce an exclusive right to reproduce, distribute and display certain works." *Id.* (also noting that "the gravamen of plaintiff's breach of contract claim is the breach of a contractual duty of confidentiality, which has been held to qualitatively distinguish such a claim from a claim of copyright infringement"). In *Architectronics, Inc. v. Control Sys., Inc.*, 935 F. Supp. 425, 441 (S.D.N.Y. 1996), the "only affirmative obligation under [the contract at issue] was to pay CSI a royalty on sales of a 'Derivative Work,'" a right identified in GE's opening submission as not equivalent to rights under copyright. (GE Mem. 19). Similarly, *Brignoli v. Balch Hardy & Scheinman, Inc.*, 645 F. Supp. 1201, 1205 (S.D.N.Y. 1986), the claims at issue "are essentially breach of contract claims that involve an element beyond unauthorized reproduction and use—a promise to pay plaintiff for use of his product" and "an agreement of confidentiality." In fact, of the cases in this District cited by BV as "in agreement" with its position, the only one that even begins to come close did so in dicta, after holding that U.S. copyright law did not apply extraterritorially to a work and contract created in Israel, and "since federal copyright law does not apply, it cannot preempt Mr. Drosnan's claims." *Torah Soft Ltd. v. Drosnin*, 224 F. Supp. 2d 704, 715-16 (S.D.N.Y. 2002). In short, BV has cited no case within this Circuit where a claim, such as BV's, that a contract was breached by acts of reproduction and use of a copyrighted work escaped preemption.

     BV's other state law claims fare no better. Indeed, *Lennon*, a case relied on by BV, found that there, similar to here, "it is clear from the complaint that the gravamen of the

9

plaintiff's unjust enrichment claim is unauthorized publication, and that the unjust enrichment claim does not involve rights 'different in kind' from those protected by federal copyright law." 63 F. Supp. 2d at 436.  Moreover, while BV argues that mutual expectations of the parties permit its *quantum meruit* claims to survive—a proposition rejected by the courts of this Circuit—no expectations of GE are pleaded.[4]

## CONCLUSION

For the reasons set forth herein and in GE's initial submission, all BV's claims against GE should be dismissed with prejudice, and BV should be ordered to pay GE's litigation costs and fees, together with such other and further relief the Court deems just and proper.

Dated: May 19, 2008
       New York, New York

                                        Respectfully submitted,

                                        LEVINE SULLIVAN KOCH & SCHULZ, L.L.P.

                                        By:    /s/ Robert Penchina
                                            Robert Penchina
                                            321 West 44th Street, Suite 510
                                            New York, NY 10036
                                            (212) 850-6100

                                        *Attorneys for Defendant General Electric Company*

---

[4] BV's submission is replete with surmise, unpled facts, and speculation about what might turn up in discovery.  For example, BV cannot point to any use limitation in the MLA, but argues that an invoice (that BV issued to a third party, and found in its own files) contains references to "PO#s," and so agreements containing restrictions (to which BV is a party and should have if they exist) "may come to light in discovery." (Opp. 7-8 n.5). But, as the Supreme Court has observed, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court."  *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1966 (2007).  Otherwise, plaintiffs with "largely groundless claim[s]" could use "the threat of discovery expense" to push defendants to settle "even anemic cases."  *Id.* at 1966-67. BV's intent to leverage an unearned settlement is made plain by its gratuitous inclusion of immaterial allegations that "GE sold its GEIS business unit . . . for between $7.4 and $7.8 billion," and "sold MedPro . . . for a reported $825 million."  (Cmpl. ¶¶ 25, 22).